IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
|---|---|
| v. | 1:16-CR-145-TWT-JKL-20 |
| CHARLES WINGATE (20) | |

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This Order and Non-Final Report and Recommendation addresses the following pending motions filed by Defendant Charles Wingate:

− Defendant's Motion for Bill of Particulars [Doc. 1024]

− Defendant's Motion to Suppress Information Gathered Pursuant to 18 U.S.C. § 2518 [Doc. 1025]

For the following reasons, it is **ORDERED** that Wingate's Motion for Bill of Particulars [Doc. 1024] be **DENIED** and it is **RECOMMENDED** that his Motion to Suppress Information Gathered Pursuant to 18 U.S.C. § 2518 [Doc. 1025] be **DENIED**.

## I.  BACKGROUND

Wingate is charged in this case with RICO conspiracy (Count One).  [*See* Doc. 1.]  The indictment alleges that Wingate was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4).  During the time period relevant to this case, Wingate allegedly served as the "Assistant Chief of Security for the Covington count."  [*Id.* at 13.]  According to the indictment, members of the Gangster Disciples are organized in geographic groups, each called a "count" or a "deck."  [*Id.* at 2.]  Allegedly, a "Governor" is the highest-ranking member within a particular state and is aware of and coordinates much of the criminal activity occurring within that state.  [*Id.* at 3.]  The "Chief of Security" for each state allegedly protects the gang and its leadership from outside threats by providing protection to the Governor and responding to requests for protection when law enforcement and rival gangs are exerting pressure on the gang.  [*Id.* at 5.]

The indictment identifies specific overt acts that Wingate is alleged to have committed in furtherance of the RICO conspiracy:

> On or about September 14, 2014, defendant CHARLES WINGATE obtained heroin from defendant SHAUNTAY CRAIG.  (Overt Act 61.)

2

>On or about October 8, 2014, defendant CHARLES WINGATE ordered heroin from defendant SHAUNTAY CRAIG for resale. (Overt Act 65.)

[Doc. 1 at 29.]

## II. MOTION FOR BILL OF PARTICULARS [1024]

In his motion for a bill of particulars, Wingate requests that the government be ordered to disclose "the facts and surrounding circumstances related to the alleged unlawful conduct of the Defendant charged in the indictment." [Doc. 1024 at 3.] He specifically argues that the allegations against him lack detail about what, if anything, he did in his alleged role as Assistant Chief of Security for the Covington count or whether he committed any criminal acts in that role. [*Id.* at 2.] Wingate asserts that absent specific allegations of wrongdoing, he cannot muster a defense, he and his counsel will be surprised at trial, and he will have difficulty pleading double jeopardy in the event he is later prosecuted for the same offense. [*Id.* at 2-3.]

The government generally responds that Wingate's motion is an improper attempt to obtain discovery. [Doc. 1092.] Nonetheless, the government states that, at trial, the evidence supporting the allegations in the indictment will consist of the testimony of witnesses, as well as wiretap intercepts, including a particular

3

interception of co-defendant Craig's phone (6844) that the government contends is a call among Craig, Wingate, and a third party. [*Id.* at 3.]

Federal Rule of Criminal Procedure 7(f) explains that:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017) (citation omitted). A bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial. *See United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973). "Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 2016), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986).

4

With regard to Wingate's request for detail concerning his role in the alleged conspiracy, the Court finds that the indictment provides sufficient detail to inform him of the charges against him. *See United States v. Henley*, No. 1:16-cr-151-LMM-JFK, 2017 WL 2952821, at *16 (N.D. Ga. May 19, 2017) (denying motion for bill of particulars seeking details concerning overt acts taken in furtherance of extortion and drug conspiracies), *report and recommendation adopted*, 2017 WL 2918954 (N.D. Ga. July 7, 2017); *United States v. Reid*, No. 3:09-CR-312-J-34TEM, 2010 WL 2653229, at *2 (M.D. Fla. July 2, 2010) (denying request for bill of particulars to specify date when alleged conspiracy was formed and the date on which each defendant joined conspiracy where indictment provided the purpose of the alleged conspiracy, the participation of the defendant in the conspiracy, and the overt acts that defendant allegedly committed, as well as approximate dates of activity). The indictment specifically alleges that on September 14, 2014 he allegedly obtained heroin from co-defendant Craig in furtherance of the alleged conspiracy.  [Doc. 1 at 29.] Moreover, the government has directed Wingate to specific evidence that it intends to offer at trial supporting its allegations against him.  [Doc. 1092 at 3.] While additional information may be helpful to Wingate, he has failed to specify how additional details are necessary to enable him to prepare his defense, avoid

surprise, or plead double jeopardy in a subsequent proceeding. *See United States v. Giffen*, 379 F. Supp. 2d 337, 346 (S.D.N.Y. 2004) ("The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense."). Accordingly, Wingate's Motion for a Bill of Particulars [Doc. 1024] is **DENIED**.

### III.   MOTION TO SUPPRESS INFORMATION GATHERED PURSUANT TO 18 U.S.C. § 2518 [Doc. 1025]

Wingate moves to suppress all communications intercepted on authorization orders for Target Telephones ("TT") 10 and 12. [Doc. 1025.] He first argues that the government failed to establish necessity in violation of 18 U.S.C. § 2518(1)(c) because the supporting affidavit presented only "conclusory allegations surrounding the need for the wiretap evidence." [*Id.* at 2-3.] He also argues that the affidavit failed to identify him in violation of § 2518(1)(b)(iv). [*Id.* at 3-5.] The government has responded to the motion. [Doc. 1091.] Wingate was given an extension through September 27, 2017 to file a reply; but did not do so.

#### A.   Background

Wingate was intercepted on TT10 and TT12 in connection with a large-scale investigation of the Gangster Disciples. According to the government's

brief, the initial order authorizing interceptions for TT10 was obtained on August 29, 2014, and the initial order for TT12 was issued on October 3, 2014. [Doc. 1091 at 3.[1]] The authorizations were renewed on October 31, 2014 and November 30, 2014. [*Id.*] FBI Special Agent Ruben A. Marchand-Morales was the affiant for the four affidavits provided in support of the applications for initial and renewed interceptions. The government has attached as an exhibit to its opposition brief the particular affidavit that it appears Wingate is challenging, but represents that the other three affidavits are substantially identical. [*Id.* at 3 n.1; *see also* Doc. 1091-1.]

Agent Marchand-Morales's affidavit is 89 pages long and contains 116 discrete paragraphs, not including subparts. [*See* Doc. 1091-1.] He provided extensive information concerning his own training, education, and experience, describes the purpose of the affidavit, and summarizes the target offenses. [*Id.* at 2-7, ¶¶ 1-7.] He also identified over sixty known and unknown target subjects. [*Id.* at 8-10, ¶ 10.] Wingate is not identified by name.

---

[1] The parties did not supply the undersigned with copies of the authorization orders; however, Wingate does not appear to disagree with the government's recitation of when the intercepts for TT10 and TT12 were approved and renewed.

7

Agent Marchand-Morales identified the objectives of the investigation and detailed over the span of twenty pages the prior wiretap applications that law enforcement obtained in connection with their investigation of the Gangster Disciples organization. [Doc. 1091-1 at 10-32, ¶¶ 11-13, 18.] As relevant to Wingate's motion to suppress, Agent Marchand-Morales spent 28 pages of his affidavit explaining why, in his view, interception of communications over TT10 and TT12 were necessary to accomplish the investigatory goals. [*Id.* at 57-84, ¶¶ 59-109.] He outlined the "traditional investigative procedures" that had been tried and had failed or that appeared reasonably unlikely to succeed where tried, did not achieve all of the investigatory goals where tried, were unlikely to achieve those goals, or were too dangerous to employ. [*Id.* at 12 at ¶ 12.] Further details concerning this portion of Agent Marchand-Morales's affidavit are discussed below.

### B.     Analysis

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-22, regulates the government's interception and disclosure of electronic surveillance, commonly called "wiretaps." *See United States v. Degaule*, 797 F. Supp. 2d 1332, 1346 (N.D. Ga. 2011), *adopted at* 1344. Title III sets out numerous requirements that wiretap applications and orders

authorizing wiretaps must meet to be valid.  *See* 18 U.S.C. § 2518.  Among other things, an application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(1)(c).  Based on the application, the district court may grant an ex parte order if it determines that "normal investigative procedures have been tried and have failed to reasonably appear to be unlikely to succeed if tried or to be too dangerous."  *Id.* at § 2518(3)(c).  This so-called "necessity requirement" is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed.  *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986).  It is not necessary, however, to demonstrate a "comprehensive exhaustion of all possible techniques."  *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984) (quotation omitted).

A Title III application must also contain "a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including . . . the identity of the person, if known, committing the offense and whose communications are to be intercepted."  18 U.S.C. § 2518(b)(1)(iv).  "The Government is not required to identify an individual in the application unless it has probable cause to believe (i) that the

9

individual is engaged in the criminal activity under investigation and (ii) that the individual's conversations will be intercepted over the target telephone." *United States v. Donovan*, 429 U.S. 413, 423 (1977).

"[A] wiretap order is presumed to be valid, and a defendant has the burden of overcoming this presumption and of proving that the wiretap order was unlawfully obtained." *United States v. Flores*, No. 1:05-cr-558-WSD-JFK, 2007 WL 2904109, at *22 (N.D. Ga. Sept. 27, 2007), *adopted at* *1-15. A reviewing court must evaluate a wiretap affidavit in a "common sense fashion," using "flexible standards." *United States v. Harrell*, 635 F. App'x 682, 685 (11th Cir. 2015) (citing *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978)). "The affidavit must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves. However, the government is not required to comprehensively exhaust all possible investigative techniques before applying for a wiretap." *Id.* (citing *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1214 (11th Cir. 2010)).

Suppression of the contents of an intercepted wire or oral communication is warranted if: (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of

authorization or approval.  18 U.S.C. § 2518(10)(a); *see also id.* § 2515 (providing for suppression of communications intercepted in violation of Title III).  In general, courts assess whether the government has failed to satisfy "any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary device." *United States v. Giordano*, 416 U.S. 505, 527 (1974); *see also Van Horn*, 789 F.2d at 1500.

As noted above, Wingate contends that the intercepts of TT10 and TT12 were unlawful because (1) Agent Marchand-Morales's affidavit failed to make an adequate showing of "necessity" in violation of § 2518(1)(c) and (2) the affidavit failed to identify Wingate as a target subject.  The Court addresses each argument in turn.

### 1. Necessity

Wingate contends that the government presented only "conclusory allegations" to make its showing of necessity.  Specifically, Wingate points to the Agent Marchand-Morales's statement that:

> The interception of wire and electronic communications over TARGET TELEPHONES 10 and 12 are necessary in this matter because traditional investigative techniques have been tried and have failed, appear reasonably unlikely to succeed where tried, have not

11

> achieved all of the investigatory goals where tried, are not likely to achieve those goals, and/or are too dangerous to employ.

[*See* Doc. 1025 2-3 (citing Doc. 1091-1 at 57-58, ¶ 61).] Wingate further argues that Agent Marchand-Morales identified evidence that had been recovered but did not provide "specific notions about failed investigative techniques that would require this intrusion." [*Id.* at 3.] The government responds that Wingate improperly focuses on a narrow portion of the affidavit and ignores overwhelming details describing the extensive scope of the investigation and why traditional investigative techniques would fail to meet the objectives of the investigation. [Doc. 1091.]

I readily conclude that the affidavit in this case provides sufficient grounds for necessity. Agent Marchand-Morales went into great detail regarding numerous forms of traditional investigation, explaining what law enforcement has been able to accomplish and what limitations those investigatory methods present. He discussed at length the prior wire interceptions, what they revealed, and what they failed to identify. [*See* Doc. 1091-1 at 58-64, ¶¶ 62-72.] Similarly, as to pen registers and toll analysis, Agent Marchand-Morales discussed how those investigative procedures have been helpful, but also why law enforcement could not rely on those techniques alone to investigate the scope and nature of the

12

Gangster Disciples enterprise. [*Id.* at 64-66, ¶¶ 73-77.] He also provided substantial information regarding the use of confidential human sources to provide information from within the organization, as well as limitations that law enforcement encountered. [*Id.* at 66-70, ¶¶ 78-81.] As an example, the affidavit reported that alleged members of the gang suspected that one undercover employee was "the police" and that the employee was able to gain only limited access within the organization. [*Id.* at 68-69, ¶ 80.] Moreover, the employee lost contact with a source inside the organization who had recently been incarcerated. [*Id.*]

Agent Marchand-Morales also discussed in detail why interviews, arrests, grand jury subpoenas, consensual monitoring, search warrants, consent searches and trash pulls were of limited use, and could very well compromise the investigation by tipping off the targets. [Doc. 1091-1 at 70-75, 82-84 ¶¶ 82-92, 106-08.] Regarding physical and electronic surveillance, Agent Marchand-Morales reported that surveillance had yielded some information, and gave specific examples, but he also explained in detail the limitations of traditional surveillance methods and how wiretap information would be more successful in accomplishing the objectives of the investigation. [*Id.* at 76-85, ¶¶ 93-105.]

13

The Court finds Wingate's argument that the affidavit fails to discuss the limitations of other investigative techniques to be without merit.  To the contrary, Agent Marchand-Morales's affidavit lays out in considerable detail the successes, failures, and limitations of traditional techniques that law enforcement used.  Accordingly, Agent Marchand-Morale presented information that was more than sufficient to support the issuing judges' findings that a wiretap was necessary. *See United States v. Dooley*, No. 1:11-cr-00255-TWT-RGV, 2013 U.S. Dist. LEXIS 81225, at *48-53 (N.D. Ga. Jan. 30, 2013) (rejecting argument that wiretap affidavits failed to demonstrate necessity where some investigatory techniques had been successful), *adopted*, 2013 U.S. Dist. LEXIS 80141 (N.D. Ga. June 7, 2013).

### 2. The Failure to List Wingate in the Wiretap Affidavit

Wingate argues that suppression is also warranted because the applications for the intercepts of TT10 and TT12 did not identify him as a target.  [Doc. 1025 at 3-5.]  Essentially, Wingate advocates for a strict rule that, if a target is known to the government and the person is not identified in a wiretap application, then the wiretap is unlawful and the evidence must be suppressed.  [*Id*. at 5.]

Presuming that the wiretap affidavits should have named Wingate as a target, suppression is not warranted here.  "It is not a constitutional requirement

14

that all those likely to be overheard engaging in incriminating conversations be named" in the wiretap application. *Donovan*, 429 U.S. at 427 n.15. Accordingly, as a matter of constitutional law, suppression is not mandated.

Nor do Title III's suppression provisions, §§ 2515 and 2518(10)(a), require suppression. In *Donovan*, the Supreme Court held that a wiretap application must name an individual under § 2518(1)(b)(iv) if the government has probable cause to believe he or she is engaged in the criminal activity under investigation and expects that the person's communications will be intercepted. *Donovan*, 429 U.S. at 427. But the Court also concluded that the failure to list an individual will not "render[] unlawful an intercept order that in all other respects satisfies the statutory requirements." *Id.* at 434. The Court reasoned that § 2518 provides that the issuing judge may approve a Title III application if he or she determines that that the necessity requirement is met and that there is probable cause to believe that: (i) an individual is engaged in criminal activity; (ii) particular communications concerning the offense will be obtained through interception; and (iii) the target facilities are being used in connection with the specified criminal activity. *Id.* at 435 (citing 18 U.S.C. §§ 2518(3)(a)-(d)). The Court continued:

> If, after evaluating the statutorily enumerated factors in light of the information contained in the application, the judge concludes that the wiretap order should issue, the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization. The intercept order may issue only if the issuing judge determines that the statutory factors are present, and the failure to name additional targets in no way detracts from the sufficiency of those factors.

*Id*. at 435. The Court went on to observe that the legislative history did not suggest "that Congress intended this broad identification requirement to play "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *Id.* at 437 (quotation omitted).

Wingate makes no argument that the affidavit failed to establish probable cause under § 2518(3), and, for the reasons discussed above, his argument that the affidavit failed to show necessity is meritless. Nor does he make any real attempt to show that the omission of his name from the list of target subjects had any bearing on the issuing judge's ability to make the probable cause and necessity determinations. *See Van Horn*, 789 F.2d at 1500. Accordingly, the omission of Wingate's name from the affidavit does not warrant suppression. *See United States v. Murdock*, No. CR410-160, 2010 WL 5538514, at *5 (S.D. Ga. Dec. 17,

2010), *report and recommendation adopted as modified*, 2011 WL 43503 (S.D. Ga. Jan. 6, 2011).

Accordingly, the Court concludes that the omission of Wingate's name from Agent Marchand-Morales's affidavits does not invalidate the wiretap orders and, therefore, suppression is not warranted, either as a constitutional matter or under Title III.

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that Wingate's Motion for Bill of Particulars [Doc. 1024] be **DENIED**, and it is **RECOMMENDED** that his Motion to Suppress Information Gathered Pursuant to 18 U.S.C. § 2518 [Doc. 1025] be **DENIED**.

There are no matters pending before me for Defendant Wingate (20), and I have not been advised of any impediments to the scheduling of a trial as to this defendant.  Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL.**[2]

---

[2] Since matters pertaining to Wingate's codefendants still are pending, the District Court is not required to place Wingate's case on the trial calendar at this time.  18 U.S.C. § 3161(h)(6).

IT IS SO ORDERED, RECOMMENDED, AND CERTIFIED this 4th day of October, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge